G. J. O. K. Ikonte, Co-Appellant, Hector Martinez The summary of our argument is that Mr. Martinez did make out a prima facie case of retaliation. Insofar as the first adverse employment action that was taken against him was the fully satisfactory performance evaluation that he received on the last day of his employment with the Department of Navy. And also that the government referred to his prior EEO activity in a negative manner, in a very derogatory manner when the FBI agent was conducting the background interview. And also the third adverse employment action is the conduct, the comment itself that we feel they made which was unjustified. There's an issue with timing. Mr. Martinez engaged in the conduct in 1995. The adverse comments were made in 1997. And whether the time period that has passed was sufficient to find an inference of causation between the comments that were made and his engaging in the protective activity in 1995. And our position, and we're guided by what is stated in COSALTA, that there is no bright line rule as to the length of time that would elapse between when the employee engaged in the was the very first time, the very first opportunity that his employer had an opportunity to make comments with regards to his employment. And when that opportunity arose two years, about two years after his EEO activity, they made comments that were unjustified. Also when we look at what was the opinion of the government about Mr. Martinez prior to his engaging in the EEO activity, and what was the opinion of the government after his engaging there, you see that there is a disparity. The only thing that happened was that prior to the EEO activity, in the annual performance review that Mr. Martinez received, he not only received a minimum fully, he only received satisfactory evaluation. There were positive comments that were made by his supervisors. You know, somebody saying he's a self-starter, he's a hard worker, he has the potential to succeed. So you had the same supervisors who not only gave him positive performance review, but also made very positive comments in the evaluation. Does your case primarily depend upon these negative reports that the FBI got from the fellow workers, or is it something more than that? Well, it depends on the three things. The comments that he made to the FBI, and also the performance evaluation that was conducted in August of 1995 after he conducted the EEO activity, and also the fact that when they were referring to the EEO activity to the FBI, they were referring to it in a very negative and derogatory manner. Some of them didn't refer, though, to the EEOC complaint at all, did they? Well, there were four out of the six that referred to the EEO complaint, and the four out of the six that referred to the EEO complaint referred to it in a negative manner. And also there were two of them, Mr. Dyett said, if I knew that my comment, that Mr. Martinez was going to find out about my comment, I would not have said anything about the EEO activity. And then the comments of the remaining two is inconsistent with the comments that they made about Mr. Martinez prior to the EEO activity in the performance review that he received when he worked under their supervision. For instance, Mr. Massey, who made negative comments about Mr. Martinez, when Mr. Martinez worked directly under his supervision and he was responsible for completing Mr. Martinez's performance review, he was full of praise for Mr. Martinez. So the only thing that changed was that he filed a complaint. And once he filed a complaint and he had an opportunity to comment about Mr. Martinez, he changed his opinion from what he documented to something else that he told the FBI. If all these fellow workers had told the FBI that they just didn't trust him as a worker or didn't think he was very good, but didn't say anything about the EEOC complaint, would your case fail there? The case would not fail because there is a history. It's not just a case of inconsistent statement. It's a case of that you have inconsistent statements that were documented, you know. So you don't think an employer can say somebody is a good worker and then all of a sudden decide, well, he's not so good after all. Once they say he's good, they're stuck with it, huh? Well, once you say he's good, you're not stuck with whether he's good. But I think that at the stage of the summary judgment, I think it's something that for a trial fact to determine whether indeed when we say that Mr. Martinez, that they changed their views, there was a basis for changing their view. Especially when you have consistently given him something positive and the only thing that changed was once he changed it. And also, once he made that complaint in 1995, the next performance evaluation he received was changed to fully satisfactory. Then the next time was two years later, then they said he's not a good worker. So you're not stuck with that, but under the facts of the case, under the circumstances that happened, yes, it is an issue as to what motivated them in making those comments. And also, if we look at it in terms of direct evidence, when they made the comment and they spoke about the EO activity in a negative and derogatory manner, that has been found to be a direct evidence of retaliation. And if the court adopts the standard that when the views were taken, then Mr. Martinez has also given a direct evidence of retaliation. And once there is that direct evidence of retaliation, there is enough then for the trial fact to look at and make a determination, not a summary judgment. Can you point to anything in the statements to the FBI that's factually false? Well, the opinion I'm talking about opinion now, I'm talking about factually false. Well, when they said that Mr. Bormel did say when he was asked, he indicated he said he did not go out of his way to help people. That's his opinion, but there's a disagreement. Mr. Martinez feels that when he worked, he went out of his way to help people. That statement like that, his reputation within the team was not too good. That's the fact that is stated. But also, before that, he was praised that he was a good team player. Were any of the witnesses interviewed by the FBI the object of the prior EEO complaint? Yes, Your Honor. Which ones? Two of the witnesses. Which ones? I believe Mr. Bormel's and I think Mr. Dietz. Two of the witnesses that were interviewed. Two of the five? Two of the six, Your Honor. Was Garola, if I'm pronouncing it correctly, G-U-R-R-O-L-A, was he an object of the EEO complaint? No, no, Your Honor. He was not an object of the EEO complaint. How about Lostrico? Lostrico was not. How about Massey? Massey was not. But Dietz and Bormel's were. Yes, Your Honor. Well, you would expect that someone who's the object of an EEO complaint might be resentful, especially if that person thought it was a false claim, right? Yes, I would expect him to be resentful if he felt it was a false claim, but to the extent of verbalizing it when you're being asked about a former employee's performance when you worked and you started discussing the protected activity, that's where the issue lies. And even those who were not named also made those comments, and they were just either secretive or derogatory or both. But the object of the action we're reviewing, if the district court had not granted summary judgment, is a trial on the merits and what, damages? The damages would be — I'm not asking you what they were, but that's — the object is to get to trial and prove up a damage case based on retaliation. Yes, Your Honor. Okay. And your contention is that there's enough conflict in the facts that there ought to have been a trial that should not have been resolved on summary judgment? Yes, Your Honor. Okay. Thank you. I'll reserve my time. You want to save some time for rebuttal? Yes, Your Honor. Thank you for your argument. Mr. Axe? The comment I'm about to make doesn't relate to you in any way or this case, but to your office. Has the word gotten around as a result of yesterday to know which courtroom you're supposed to be in? I'm sorry. Well, we had an assistant yesterday who checked in and then went to the wrong courtroom. Was this someone from the civil division or the criminal division? Civil, I think. Really? Yeah. But — I apologize. You don't have to apologize. Not you. Just tell the folks, they may want to write on their right hand the number — I will. — of the courtroom that they're supposed to be in. Go right ahead. Especially since there's a one-in-three chance of getting it right, which is what we expect. Go right ahead. Thank you, Your Honor. May it please the Court, I'm Assistant United States Attorney Jason Axe representing Defendant Appelli. In 1995, Mr. Martinez left his engineering job with the Navy to move to Arizona, and he subsequently applied for a job with the FBI to be a special agent. Two years later, as we've heard, after leaving the Navy in 1997, an FBI investigator began conducting a background check to determine his qualifications. Did he leave the Navy of his own volition? Yes, he did, Your Honor. What happened was, and if I can clear the record up at this point, what happened was that Mr. Martinez went on an extended sick leave in December of 1994. He went on leave without pay status in February of 95, and then he formally resigned from the Navy in August of 1995. And in the interim, between the time that he left on his leave without pay status and he left the Navy formally, he filed an EEO complaint in March 95, and then he withdrew that complaint three months later. So there's been reference to an evaluation that occurred at the end of his time with the Navy, his closeout evaluation in August 1995. Two points I'd like to make about that. The evaluation was a fully satisfactory, and as the Court is likely aware from reviewing the records, when we hear references to a fully successful evaluation, that is a 3 on a scale of 1 to 5. To put it in perspective, on a scale of A to F, that's a C evaluation. So what happened when he left the Navy, because he hadn't been there for six months, they rated him as fully satisfactory, but that wasn't an adverse action that was raised in the EEO complaint that was the subject of the district court action below. So the only adverse action that's at issue here are the negative comments that were made by the coworkers, the past coworkers and the past supervisors, not this August 1995 fully satisfactory review. So I continue. How much time elapsed between the time he resigned and the time that the FBI interviewed these coworkers? The time that he formally resigned was August 1995, and the coworkers were interviewed in 1997, April of 1997. So about two years. About two years. So the issue here with respect to the timing, Your Honors, is that the cases show that because the temporal proximity was not close enough, the Mr. Martinez is not entitled to an inference that there was retaliation. So what he needs to do to prove a prima facie case is he needs to demonstrate through the totality of the circumstances, looking at the whole picture, that there was causation in terms of an allegation of retaliation. In other words, he must show that engaging in the protected activity, his EEO complaint, was one of the reasons for his firing and that but for such activity he would not have received the negative references. And what we've shown to the court is that, as the court has noted, there were six individuals who were interviewed by this FBI investigator. Only two of them were the subject of the EEO complaint. Four of them submitted affidavits to the court stating that the EEO complaint was not the reason that they made their negative references, and that's undisputed. Mr. Martinez had the opportunity to take their depositions and did not do so. So that testimony is undisputed in the record below. Can I ask just maybe a structural question here? There were six former workers that were interviewed?  Bomels, Dietz, Drake, Garolo, Lostrico, and Massey? That's correct. Were any of them, were they all supervisors? Or were they in the structure of the chain of command at the unit? Three of them had been supervisors. I can take you through chronologically, if you like. Massey was a supervisor between 1989 and 1991. Lostrico was a coworker in 1991. Garolo was a supervisor in 94, slightly out of order. Drake was a supervisor from 91 to 93. Dietz was an acting team leader in 94. And Bomels was a team leader in 93 to 95. But let me throw something in, Your Honors, that I think is being missed here. No. One of the purposes of that question, and it may be unanswerable, among these six people at the time Martinez was with the Department of the Navy, was one of them more senior than any of the others in the chain of command? I don't have the answer immediately in front of me. I believe in the record in the performance evaluations, there are occasions where you have a first-line supervisor and a second-line supervisor listed in the performance evaluations. But one of the issues here has to do with a question whether this EEO complaint changed things. And there are two points to be made. First of all, we have in the record marginal, mediocre, average performance evaluations. But more importantly, we have negative comments made by these coworkers and supervisors before the EEO complaint, before 1995. In November of 1994, to be specific, there were negative comments being made about Mr. Martinez. In fact, Mr. Martinez, in his EEO complaint that he filed in 95, alleged that he had been having problems with his employer for 16 months prior to the EEO complaint. And among the statements that were made in November 1994 that are in the record were Hector contributes zero to nothing to the program. It was William Smith. Hector has no initiative, Frederick Irvest. Mr. Bummel said in November 1994, Hector misses meetings and nobody wants to work with him. Hector deserves a marginal rating. That was from Bummel's. In the record, that's at page 37 and at page 239. That was before he filed his complaint. Before. So the issue here is why were they making these comments? Well, they were making these comments because that was their true belief. Why did they make the comments after the EEO complaint? Because that was their true belief. And it was consistent with the comments they had made before the EEO complaint. So it can't be said that negative comments about Mr. Martinez were based on the EEO complaint or that but for the EEO complaint they wouldn't have made those negative comments when they were already making those negative comments before and when he had complained about them before. Is your best approach saying that the plaintiff did not make out a prima facie case or is it that there's no pretext? Well, I think it's both, Your Honor. I think we initially presented to the Court the argument and the district court agreed that he had failed to make out the prima facie case. When you look at the whole picture, when you look at the fact that he was scored a 3 out of 5 for the most part, and there is evidence in the record that he had one performance evaluation where he had an exceeds expectations, which would be a B, let's say, on the scale. But the record also reflects that the reason he was given that was because they were trying to get him promoted to a GS-12 and his work substantially declined after that. That's in the record at 114. What year was that? I'm sorry? What year was the good report? That was in 1991 to 92. That's at page 157 in the record. And the comments that were made at 114, I believe in Drake's either declaration affidavit or in his comments to the FBI officer, page 114, were that they tried to get him promoted. And in the very next performance review, it went back down to a 3 because his work declined. Who wrote that evaluation? I believe that was Mr. Drake. And that evaluation is at page 157 in the record. There's another point here, Your Honors, and that is that Mr. Martin – I'm sorry. Mr. Martinez was not applying for a promotion within the agency. He was applying for a position as a special agent with the FBI. And when these individuals were asked by the FBI investigator what they thought about Mr. Martinez's likelihood of success with the FBI, that was a basis for their responses. So as the Court has noted, and Martinez has failed to rebut, there are no factual inaccuracies in the statements that were made to the FBI. Then when asked the question about their recommendations, whether he would be a successful FBI agent, based on their experiences with him, they uniformly said no. One made a comment about they wouldn't trust him with a gun, although there's a question in the record about why he made that comment, whether he was asked by the FBI agent whether he would be trusted with a gun or not. And that raises another issue, which is there's no dispute in the record, but it raises – in looking at it, there is no evidence that these individuals introduced information about the EEO complaint because they intended to do it in a derogatory manner. In fact, one individual submitted in the affidavit that the reason he showed the investigator the EEO complaint was that he was asked. So you have a situation where someone's being interviewed by an FBI investigator and says, can I see a copy of the EEO complaint? He's going to show him a copy of the EEO complaint. So to answer more directly your question, Your Honor, that's our argument on causation. I could talk about pretext as well, and it ties in with what I've been saying because you have a situation where the Navy has articulated legitimate reasons for the statements made, and it's supported by the evidence in the record. And Mr. Martinez has failed to rebut that because he hasn't produced direct evidence and he hasn't produced sufficient circumstantial evidence to indicate that the reason should either be shown to be internally inconsistent or otherwise not believable. Okay. Thank you for coming in today. Appreciate your argument. Rebuttal, counsel? Thank you. The governor refers to a note that was written by Mr. Martinez in November of 2004 to show that negative comments were already being made. The performance evaluation which we have that was done for that year simply said, Mr. Martinez officially was assigned to my branch on 7-10-05, and he provided technical performance very capable, provides group reports very cooperative, accomplished, and willing to attempt everything. This is in the record, and this was what was written. The last performance review he got before he filed the EO complaint. And when he filed the EO complaint, it drops to fully satisfactory. So when you look at what they signed in the record based on Mr. Martinez' performance, they consistently made positive comments. The minimum he got was fully successful, which has been characterized as C. That was the minimum. But he was getting As and Bs if I borrow that. Also, the fact that they were negative about the EO complaint when they spoke to the FBI agent, I mean, it hasn't been found to be retaliation per se. You know, they had no business. There was no reason to start commenting about it in a negative manner. He has filed EO complaint against everybody here. When he filed it, nothing came out of it, which was misleading because Mr. Martinez withdrew that. That itself is a direct evidence. That particular conduct was an adverse action. To refer to a protected activity in a negative or derogatory manner satisfies the prong of adverse employment action for retaliation. And the fact that they did that is a direct evidence, and there's been nothing said to report that. We, looking at the totality of the circumstance, the manner in which it was treated, granted and all the performance evaluations that he received, the inconsistent statements, and we're not just talking about inconsistent statements. The fact is that those two inconsistent statements cannot lie side by side. You know, you can make inconsistent statements and we'll say, well, that does not meet the burden of circumstantial evidence. But when you cannot reconcile those inconsistent statements, I mean, it's either he was a good worker or he was not. It's either what you documented, the positive comments that you made in the review came, you meant it when you said it, or not. You know, you can't have it both ways. You can't praise somebody to the high heavens, and then when you file a complaint, you change your mind and you start speaking, saying negative things about him. And the allegations, the opinions that were expressed were inconsistent with that. And with that, unless you have any further questions. I don't see any. Thank you very much for your argument. Appreciate you both coming in today. The case just argued will be submitted for decision. And we'll proceed to the last case in the argument calendar this morning, which is no Watney versus Johnson.
judges: T.G. Nelson, Siler, Hawkins